v.

**STATE of Texas, Appellee.**

**No. 1583.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

Sept. 21, 1977.

Jerry Benedict, Angleton, for appellant.

Ogden Bass, Crim. Dist. Atty., A. B. Crowther, Asst. Crim. Dist. Atty., Angleton, for appellee.

J. CURTISS BROWN, Chief Justice.

This is an appeal from a judgment that the appellant was a child engaged in delinquent conduct. The conduct alleged to be delinquent was the forging of a check.

On July 8, 1976, D. B. (appellant) presented a check at Benedict's Super Market (Benedict's), a grocery business located in Sweeny, Texas. The check, drawn on Sweeny Bank, was made payable to the order of the appellant's mother in the amount of $57.50. The check contained signatures purporting to be those of appellant's stepfather, as drawer, and appellant's mother, as endorser and payee. Upon presentation of the check, Bill Fears, the owner of Benedict's gave appellant $57.50 in cash. Benedict's stamped the check "for deposit only" and presented it to Sweeny Bank for payment. Sweeny Bank later returned the check to Benedict's, bearing the notation that the signatures of appellant's mother and stepfather were irregular.

A detention hearing was held on August 2, 1976, in connection with an unrelated criminal act allegedly committed by the appellant. The appellant and his mother were present at the hearing, and an attorney was appointed to represent the appellant for the duration of that hearing. At the conclusion of the hearing, the appellant was ordered detained pursuant to section 54.01(h) of the Texas Family Code for a period not to exceed ten days. During that ten day detention period, the appellant was not represented by an attorney, nor was a guardian ad litem appointed to look after appellant's interests.

At some time between August 2, 1976, and August 8, 1976, appellant's mother filed charges against the appellant for forging the check in question. On August 8, 1976, during the initial ten day detention period, appellant was questioned by the chief of police of the Sweeny Police Department concerning forgery of the check. The appellant made an oral statement to the chief of police at that time. Between 9:00 and 10:00 o'clock on the morning of August 9, 1976, also during the initial ten day detention period, the appellant was again questioned by the chief of police. Appellant agreed to give the chief of police a written statement later that afternoon. At 6:00 o'clock in the afternoon the chief of police resumed his questioning of the appellant. Appellant agreed to make a written confession and was then taken before a magistrate, where he was warned of his rights by the magistrate at 6:20 p. m. with no law enforcement officer or prosecuting attorney present. The appellant returned to the office of the chief of police at approximately 6:30 p. m., where he made a written statement. The appellant was again taken before the magistrate where, with no law enforcement officer or prosecuting attorney present, he signed the written confession at

7:30 p. m. The confession contained the statement that the appellant knowingly, intelligently and voluntarily waived the rights given to him by section 51.09(b) of the Texas Family Code, including the right to have an attorney present to advise him during questioning.

At some point subsequent to the expiration of the ten day detention period, another detention hearing was held. The same attorney who represented appellant at the first hearing was appointed to represent him at the second hearing. The record does not reflect the outcome of that second hearing. There is nothing in the record to indicate whether the court ordered the appellant released from detention or detained for a further period of time. The appellant was detained, nevertheless, beyond the initial ten day detention period.

A summons to appear at an adjudication hearing was served upon the appellant on August 17, 1976, while he was being detained beyond the initial ten day detention period. That same day, the trial court appointed as attorney for appellant, for purposes of the adjudication hearing, the same attorney who had represented the appellant at both detention hearings. The appointed attorney filed his waiver of ten days to prepare for trial on August 19, 1976. The adjudication hearing, accordingly, was held on August 19, 1976, and the court ruled that the appellant was a child engaged in delinquent conduct. At the disposition hearing on August 23, 1976, the appellant was committed to the custody of the Texas Youth Council.

Appellant asserts by his first point of error that the adjudication that he was a child engaged in delinquent conduct should be reversed and the case remanded for a new trial because the trial court erred in not appointing an attorney to represent appellant during his detention period. Appellant contends that the failure of the court to appoint an attorney during his detention was a deprivation of due process of law. In this connection, appellant contends that because his mother was the complaining witness against him, because his stepfather did not visit him until after the initial ten day detention period had elapsed, and because he was without an attorney or guardian ad litem during the period of his detention from August 2, 1976, to the date of the second detention hearing and between the second detention hearing and August 17, 1976, the appellant was without the protection of a person concerned with his interests. Appellant also claims, in this regard, that he was illegally detained from the expiration of the first detention order on August 12, 1976, until his trial on August 19, 1976. Appellant contends that the failure of the trial court to appoint an attorney during his detention violated his right to due process of law under the United States Constitution, and was harmful to him in two respects.

■ Appellant argues, firstly, that the failure to provide him with an attorney during his detention effectively denied him the right to seek habeas corpus relief from the illegal detention during the period of August 12, 1976, to August 19, 1976. We do not accept appellant's allegations that no additional detention hearing was held during that period. Appellant's Motion to Dismiss for Failure to Appoint an Attorney states that the trial court had appointed the appellant's attorney to represent the appellant in two separate detention hearings. There is further evidence in the Transcript and Statement of Facts that a second detention hearing was held. The record does not reflect, however, that following the second detention hearing a detention order was entered in accordance with the requirements of section 54.01 of the Texas Family Code. We agree with appellant, therefore, that his detention from August 12, 1976, to August 19, 1976, was unlawful.

■ While we do not condone the unlawful detention of the appellant beyond the initial ten day period, the record does not show and the appellant does not contend that his inability to seek habeas corpus relief contributed in any way to the finding by the trial court that the appellant was a delinquent child. Neither does it appear from the record that the illegal de-

tention affected in any way the appellant's rights in this appeal. Even if we were to accord the appellant all the rights and privileges that he would have as an adult in a criminal proceeding, we still would conclude that the appellant is not entitled to a reversal and a remand of the case because he was illegally confined. If a conviction is not based upon the fruits of an illegal detention, the mere fact that the illegal detention occurred will not invalidate the subsequent conviction. *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) (defendant detained pending trial without a determination of probable cause); *Johnson v. State*, 548 S.W.2d 700 (Tex.Crim.App. 1977) (defendant illegally arrested). We note that the appellant made his confession during the initial ten day detention period, and not during the period of illegal detention. The failure of the trial court to appoint an attorney for appellant was not harmful error just because the appellant was thereby effectively denied the right to seek habeas corpus relief.

■ Appellant also contends that the failure of the trial court to appoint an attorney for him during the detention period harmed him because he was induced to make a written confession without the assistance and advice of counsel. We note at this point that the appellant was given two detention hearings. He was represented by able and competent counsel at both hearings. The same attorney who represented the appellant at both detention hearings was appointed to represent him, for purposes of the adjudication hearing, within a few days after the second detention hearing. At the adjudication hearing, appellant's attorney was also appointed guardian ad litem for appellant, and he has served the appellant in both capacities at the adjudication hearing, at the disposition hearing and during the prosecution of this appeal. The appellant contends, nevertheless, that he was deprived of due process of law because, at the time that he confessed to forging the check, he was not represented by counsel.

Before Texas' adoption of the Family Code in 1973, courts could receive a minor's confession even in the absence of an attorney or other adult interested in the minor's welfare. *B. L. C. v. State*, 543 S.W.2d 151 (Tex.Civ.App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.). When the Family Code became effective on September 1, 1973, section 51.09 required the presence of an attorney before a minor could make a confession. As a result, the number of confessions by minors decreased significantly. *Id.* The Family Code was amended, however, so that as of September 1, 1975, a minor need no longer have an attorney present in order to make a confession, so long as the requirements of section 51.09(b) are complied with. *Id.*

The appellant was well represented by counsel at every significant stage of the proceedings against him except when he waived the right to counsel pursuant to section 51.09(b) of the Texas Family Code and made his confession. His rights were adequately safeguarded in compliance with the requirements of the Family Code. We cannot say, therefore, that the failure of the court to appoint an attorney to represent appellant during the entire period of the appellant's detention constituted harmful error. We do suggest that in the future counsel for juveniles not be appointed in such a piecemeal fashion. The interests of a juvenile would be better protected if counsel were appointed at the preliminary stage of proceedings against the juvenile and representation continued until the termination of those proceedings.

■ Appellant asserts by his second point of error that the trial court erred in overruling his motion to suppress the confession. Appellant claims that the confession did not satisfy the requirements of section 51.09(b) of the Family Code, which states:

Notwithstanding any of the provisions of Subsection (a) of this section, the statement of a child is admissible in evidence in any future proceeding concerning the matter about which the statement was given if:

(1) when the child is in a detention facility or other place of confinement or in the custody of an officer, the statement is made in writing and the statement shows that the child has at some time prior to the making thereof received from a magistrate a warning that:

(A) he may remain silent and not make any statement at all and that any statement he makes may be used in evidence against him;

(B) he has the right to have an attorney present to advise him either prior to any questioning or during the questioning;

(C) if he is unable to employ an attorney, he has the right to have an attorney to counsel with him prior to or during any interviews with peace officers or attorneys representing the state;

(D) he has the right to terminate the interview at any time;

(E) if he is 15 years of age or older at the time of the violation of a penal law of the grade of felony the juvenile court may waive its jurisdiction and he may be tried as an adult; and

(F) the statement must be signed in the presence of a magistrate by the child with no law enforcement officer or prosecuting attorney present. The magistrate must be fully convinced that the child understands the nature and contents of the statement and that the child is signing the same voluntarily. If such a statement is taken, the magistrate shall sign a written statement verifying the foregoing requisites have been met.

The child must knowingly, intelligently, and voluntarily waive these rights prior to and during the making of the statement and sign the statement in the presence of a magistrate who must certify that he has examined the child independent of any law enforcement officer or prosecuting attorney and determined that the child understands the nature and contents of the statement and has knowingly, intelligently, and voluntarily waived these rights.

(2) it be made orally and the child makes a statement of facts or circumstances that are found to be true, which conduct tends to establish his guilt, such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed.

(3) the statement was res gestae of the delinquent conduct or the conduct indicating a need for supervision or of the arrest.[1]

More specifically, the appellant complains that the requirements of section 51.09(b)(1) were complied with except insofar as the magistrate failed to include paragraph (F) in his warning to appellant.

The primary purpose of paragraph (F) seems to be to inform the juvenile that any statement that he makes, in order to be used against him, must be made by him pursuant to a knowing, intelligent and voluntary waiver of the rights enumerated in paragraphs (A) through (E). The remainder of paragraph (F), since it adds nothing to the juvenile's understanding of his rights, seems to be more in the nature of an admonition to the magistrate than a warning to the juvenile. The statement signed by the appellant relates that he knowingly, intelligently and voluntarily waived his rights under section 51.09(b) in making his confession, and the appellant testified on cross-examination at the adjudication hearing that in fact he was not threatened or in any way coerced into making a written confession. We believe, therefore, that although it would have been much wiser for the magistrate to have tracked carefully the language of section 51.09(b)(1), the warning that was actually given the appellant complied substantially with the requirements of that section, and does not require reversal.

1. Tex. Family Code Ann. § 51.09(b) (Supp.1976).

**850**

The appellant states as his third point of error that the trial court erred in determining that the appellant was a child engaged in delinquent conduct because, in the absence of the written confession made by appellant, there was insufficient evidence to support the trial court's finding that appellant made the forged check. Appellant states that, without the confession, there is only the handwriting comparison testimony of two witnesses as evidence that appellant made the check. Appellant relies upon *Davis v. State*, 297 S.W.2d 845 (Tex.Crim.App. 1957), for the proposition that handwriting comparison testimony, by itself, is insufficient to establish the maker of a check.

 Because the written confession of appellant was properly admitted by the trial court, there clearly was sufficient evidence to support the finding of the trial court that appellant made the forged check. But even if the confession of appellant were excluded, there still would be sufficient evidence to support the trial court's finding. *Davis v. State*, cited by appellant, is inapposite. In *Davis*, the Texas Court of Criminal Appeals was construing Article 38.27 of the Code of Criminal Procedure which provides that proof by comparison is insufficient to establish the handwriting of a witness who denies his signature under oath. Tex. Code Crim. Proc. Ann. art. 38.27 (1966). The record does not show that appellant denied under oath that he signed the forged check. Moreover, the proceedings in the trial court to have the appellant adjudged a delinquent child were civil in nature. As civil proceedings they were not governed by the Texas Code of Criminal Procedure or by criminal law but were governed by the Texas Rules of Civil Procedure. *Matter of S. J. C.*, 533 S.W.2d 746 (Tex.Sup.), *cert. denied*, 429 U.S. 835, 97 S.Ct. 101, 50 L.Ed.2d 100 (1976). There is, therefore, no reason why the comparison testimony of the two witnesses cannot serve as sufficient evidence to support the findings of the trial court.

Appellant's points of error having been fully considered and being overruled, the judgment of the trial court is hereby affirmed.

Affirmed.