# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-22-00206-CV

---

### In the Matter of I. N. A.

---

### FROM THE COUNTY COURT AT LAW NO. 1 OF HAYS COUNTY
### NO. 5520, THE HONORABLE ROBERT UPDEGROVE, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

I.N.A., now seventeen years old, filed this accelerated appeal from the juvenile court's order waiving jurisdiction and transferring his case to criminal district court for criminal proceedings as an adult (the Certification Order). *See* Tex. Fam. Code §§ 54.02(a), 56.01(h), (h-1). On appeal, I.N.A. challenges the sufficiency of the evidence to support the Certification Order and complains that the State failed to disclose certain information prior to the transfer hearing and that his due-process rights were violated. We affirm.

### BACKGROUND

The State in its petition seeking the Certification Order alleged that I.N.A. had engaged in delinquent conduct when he was fifteen years old, specifically, that he had committed murder, aggravated robbery, and aggravated assault with a deadly weapon, all stemming from a shooting that occurred in December 2020. The State alleged that I.N.A. had arranged to buy marijuana from a teenage girl, who would later tell investigators that when she and I.N.A. made the exchange, he pulled out a gun and pointed it at her head. I.N.A.'s friend, who drove him to the buy, reported that a teenage boy rushed toward I.N.A. and the seller, and I.N.A. shot him. The

boy died at the scene and was later identified as the seller's brother. I.N.A. was later interviewed by police and admitted that he was at the location of the shooting to buy drugs and that when a male approached him, he pulled out his gun and fired shots towards him.

After a hearing on the State's petition, where the State presented witnesses and other evidence, the court granted the State's petition, *see* Tex. Fam. Code § 54.02(a), (f), in the order that I.N.A. now appeals, *see id.* § 56.01(a), (b), (c)(1)(A), (d)(1).

## DISCUSSION

### I.  The evidence was legally sufficient to support the Certification Order.

In his renumbered first issue, I.N.A. maintains that the evidence was legally insufficient to support the Certification Order.[1]  A juvenile court may waive its exclusive jurisdiction over a child and transfer the child to district court for criminal proceedings if, as relevant here, (1) the child is alleged to have committed a felony, (2) the child was at least 14 years old when the child was alleged to have committed a first-degree felony or at least 15 years old when the child was alleged to have committed a second-degree felony, and (3) "after a full investigation and a hearing, . . . there is probable cause to believe that the child . . . committed the offense alleged and that because of the seriousness of the offense alleged or the background of the child the welfare of the community requires criminal proceedings."[2] *See id.* § 54.02(a).  In making these determinations,

---

[1]  Although appellant's brief only identifies three issues in the "issues presented" section, the body of the brief contains additional issues.  For clarity, we will reorganize and construe the issues as four.

[2]  I.N.A. does not contest that he allegedly committed felonies when he fell within the age ranges specified by the statute.  *See* Tex. Fam. Code § 54.02(a)(1)–(2).

2

the court shall consider, among other matters:

(1) whether the alleged offense was against person or property, with greater weight in favor of transfer given to offenses against the person;

(2) the sophistication and maturity of the child;

(3) the record and previous history of the child; and

(4) the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court.

*Id.* § 54.02(f). These factors are nonexclusive, and the juvenile court need make no particular findings of fact with respect to the factors. *In re J.R.*, No. 05-20-00920-CV, 2021 WL 777090, at *6 (Tex. App.—Dallas Mar. 1, 2021, pet. denied) (mem. op.). The court "may order a transfer on the strength of any combination of the criteria listed in" subsection (f). *Id.* The court's transfer decision is made by a preponderance of the evidence. *Id.*

"In evaluating a juvenile court's decision to waive jurisdiction, we first review the juvenile court's specific findings of fact regarding the section 54.02(f) factors under 'traditional sufficiency of the evidence review.'" *Id.*; *see also In re D.J.M.*, No. 03-18-00476-CV, 2019 WL 190535, at *2 (Tex. App.—Austin Jan. 14, 2019, no pet.) (mem. op.) ("As an appellate court, we review D.J.M.'s challenges to the juvenile court's findings under traditional standards for reviewing sufficiency of the evidence."). "Second, we review the juvenile court's ultimate waiver decision for an abuse of discretion." *J.R.*, 2021 WL 777090, at *6; *accord D.J.M.*, 2019 WL 190535, at *3. "A juvenile court abuses its discretion when its decision to transfer is essentially arbitrary, given the evidence upon which it was based." *J.R.*, 2021 WL 777090, at *6; *accord D.J.M.*, 2019 WL 190535, at *3.

3

When reviewing the legal sufficiency of the evidence to support a finding, "we credit evidence favorable to the challenged finding and disregard contrary evidence unless a reasonable factfinder could not reject the evidence." *D.J.M.*, 2019 WL 190535, at *2. "In deciding whether evidence is legally sufficient, we consider only the evidence and inferences tending to support the finding of the trier of fact." *In re C.C.*, 930 S.W.2d 929, 933 (Tex. App.—Austin 1996, no writ). Because the State bore the burden of proof here, I.N.A.'s legal-sufficiency challenge fails "[i]f there is more than a scintilla of evidence to support the finding" under attack. *See D.J.M.*, 2019 WL 190535, at *2.

Taking the factors in Section 52.04(f) in order, we first observe that two of I.N.A.'s alleged offenses—murder and aggravated assault with a deadly weapon—by definition, are offenses against a person. *See* Tex. Fam. Code § 52.04(f)(1); *see also* Tex. Penal Code §§ 19.02, 22.02 (listing murder and aggravated assault within portion of Penal Code entitled "Offenses Against the Person"). I.N.A.'s current probation officer and a detective who investigated the offenses testified at the hearing that I.N.A. shot and killed another juvenile while purchasing marijuana.

Second, the State presented evidence at the hearing that supported a finding that I.N.A. had sufficient "sophistication and maturity" to appreciate the nature and effect of his actions and whether his actions were right or wrong. *See* Tex. Fam. Code § 52.04(f)(2); *see also J.R.*, 2021 WL 777090, at *8 (explaining that "sophistication and maturity" factor addresses child's ability to appreciate nature and effect of actions and whether actions are right or wrong). One of the investigating detectives testified about I.N.A.'s actions surrounding the alleged murder—that I.N.A. set up a drug buy from his friend, told another friend that he would rob the drug-dealer, brought a weapon to the arranged meeting, shot the child who tried to intervene, went home and

4

put the clothes that I.N.A. wore to the drug buy in the washing machine, told a friend to delete any conversations about the events from the friend's phone, and then disposed of the gun. The detective testified that these actions by I.N.A. "require[] a higher degree of thinking, I would think, because you're not only thinking of the then and there, but also what's to come later." *See J.R.*, 2021 WL 777090, at *9 ("[A]ttempts to conceal evidence of the crime may show sophistication and maturity, not the lack of, and indicate a person appreciates that his conduct is wrongful."). A second detective testified that I.N.A. would play "a cat-and-mouse game" during interviews, giving only some information to investigators but withholding other information. All the detective's interviews with I.N.A. made I.N.A. seem "a little bit more" mature than a typical fifteen-year-old, "doing more adult-type things" and acting in the interviews "the same way some of [the detective's] adult alleged suspect[s]" have. Finally, John Conboy, a clinical social worker who was providing counseling services to I.N.A., testified that I.N.A.'s IQ is "high in the average range or above," showing a certain level of sophistication when compared to others his age. I.N.A. showed "above-average intellect"; was "a little above average emotionally"; and "[f]or incarcerated youths, . . . at the top of the heap . . . in terms of his IQ." Given the detectives' and Conboy's testimony, we conclude that sufficient evidence related to the second factor was presented by the State to support the juvenile court's decision.

The State also presented evidence related to the third factor, I.N.A.'s "record and previous history," that supported the juvenile court's decision. *See* Tex. Fam. Code § 54.02(f)(3). Both witness testimony and exhibits established that I.N.A. had many prior referrals to juvenile probation, including for allegations of a 2020 unauthorized use of a motor vehicle, for which he was on conditional release when the December 2020 incident occurred; a 2015 assault bodily injury of a family member; a 2016 assault bodily injury; a 2018 assault bodily injury; and a 2019

5

disorderly conduct. I.N.A.'s juvenile probation officer testified that while I.N.A. was being detained for the allegations in this case, he received several incident reports. According to these incident reports, I.N.A. had threatened to slap a guard with his genitals, threatened to beat up another guard, struck other detainees at least twice, and was written up another time for refusing to go to his cell. In all, the evidence supported a finding under Section 54.02(f)(3) in support of the Certification Order.

Fourth, the evidence supported a finding in favor of transfer when considering "the prospects of adequate protection of the public and the likelihood of the rehabilitation of the child by use of procedures, services, and facilities currently available to the juvenile court." *See id.* § 54.02(f)(4). The evidence of I.N.A.'s history of alleged offenses and conduct problems in school and in detention suggests that I.N.A. is a danger to the public. Further, although Conboy testified that he had counseled I.N.A. from July 2018 to February 2019 (after prior alleged delinquency), the evidence showed that I.N.A. continued to engage in delinquent activity and to exhibit behavioral problems, including while in detention for this case. That continued conduct included both the alleged unauthorized use of a motor vehicle and the alleged murder in this case. In sum, we overrule I.N.A.'s legal-sufficiency challenge to the evidence supporting the transfer under the Section 54.02(f) factors and conclude that the juvenile court did not abuse its discretion. We overrule I.N.A.'s renumbered first issue.

## II.     I.N.A.'s nondisclosure arguments were not preserved

In his renumbered second issue, I.N.A. maintains that both the juvenile court and the State failed to disclose to him records created by Conboy, specifically, counseling notes, and

that this nondisclosure violated Family Code sections 51.17(b), 54.02(e), and 58.007.[3]  Both sides appear to agree that the complained-of records are in State's exhibits 18 and 19, which were admitted into evidence during the final hearing and which I.N.A.'s counsel used to examine Conboy.  In fact, Conboy testified that he gave the records to I.N.A.'s counsel when she asked for them shortly before the hearing.

To preserve a complaint for appellate review, a party must make a timely and sufficiently specific request, objection, or motion in the trial court.  Tex. R. App. P. 33.1(a)(1).  In addition, the record must show that the trial court either ruled on the request, objection, or motion expressly or implicitly, or refused to rule and the complaining party objected to the refusal.  *See id.*; *In re G.X.H.*, 627 S.W.3d 288, 294 (Tex. 2021).  These error preservation requirements apply to complaints about disclosure under Section 54.02(e).  *In re T.C.*, No. 06-21-00075-CV, 2022 Tex. App. LEXIS 977, at *7 (Tex. App.—Texarkana Feb. 10, 2022, no pet.) (mem. op.).

Nothing in the record shows that I.N.A.'s counsel complained about the timeliness of the disclosure of Conboy's counseling notes or objected to their admission.  Although I.N.A.'s counsel questioned Conboy about when he made the counseling reports and whether he had disclosed the reports to either the State or I.N.A.'s counsel prior to the proceedings, he did not ask the court to grant any relief with respect to these documents.  Significantly, when the State offered the reports into evidence, I.N.A.'s counsel stated that there was "no objection."  Because I.N.A.

---

[3]  Section 51.17(b) provides that discovery in cases like this one "is governed by the Code of Criminal Procedure and by case decisions in criminal cases."  Tex. Fam. Code § 51.17(b).  Section 54.02(e) provides that "[a]t least five days prior to the transfer hearing, the court shall provide the attorney for the child and the prosecuting attorney with access to all written matter to be considered by the court in making the transfer decision."  *Id.* § 54.02(e).  Lastly, Section 58.007 lists several procedures governing the maintenance and confidentiality of records about children, including a provision that an attorney representing the child may inspect or copy the records.  *See id.* § 58.007(b)(4); *see generally id.* § 58.007(a)–(i).

did not seek and did not obtain an adverse ruling regarding the complained-of records, we conclude that I.N.A. has failed to preserve error on this issue.

**III.     There is no statutory requirement that the State have called a certain witness.**

In his renumbered third issue, I.N.A. maintains that the State should have called as a witness "the court-ordered expert for this matter, Dr. Eric Frey."  I.N.A. argues that the State's not calling Dr. Frey "did not comply with [Sections] 51.17(b) and . . . 58.007."  I.N.A. does not explain, and we fail to see, how these provisions require the State to call certain witnesses to support its petition.  We therefore overrule I.N.A.'s renumbered third issue.

**IV.     I.N.A.'s due-process complaints are either not preserved or not meritorious.**

In his renumbered fourth issue, I.N.A. maintains that he was deprived of due process at his transfer hearing and thus that he "should be given a new hearing, before a new judge, and that hearing should be held to the standard of the quasi-civil/quasi-criminal due process under the Texas Family Code evidentiary sections and the Texas Rules of Evidence."  In support of his argument, he reiterates his complaints about the nondisclosure of Conboy's counseling notes and about the State's failure to call Dr. Frey, both discussed above, and raises three "additional due process violations under both civil and criminal rules of evidence."  The additional due-process violations, he argues, are the prosecutor's closing-argument statement that I.N.A.'s smirking in court showed his "dismiss[ing] the seriousness of this case"; the State's offering exhibits of his social-media accounts and evidence of two interviews with I.N.A., all of which he says would

ordinarily be inadmissible; and "a phone call between the officer and the first assistant felony chief that was not disclosed or included in the discovery provided to the juvenile's attorney."[4]

In *Kent v. United States*, the Supreme Court instructed that in transfer proceedings, due process requires "a hearing, including access by [the child's] counsel to the social records and probation or similar reports which presumably are considered by the court, and . . . a statement of reasons for the Juvenile Court's decision." 383 U.S. 541, 552–53 (1966); *see, e.g.*, *Ex parte Thomas*, 623 S.W.3d 370, 379–81 (Tex. Crim. App. 2021) (applying *Kent*); *In re D.T.*, 631 S.W.3d 355, 358 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (same). When raising a due-process complaint, an appellant must assert that he or she "was treated in an irregular manner" because due process is "at stake when an individual is treated in a unique or arbitrary way." *In re S.C.*, 790 S.W.2d 766, 772 (Tex. App.—Austin 1990, writ denied); *see also Ex parte Thomas*, 623 S.W.3d at 380 (noting that juvenile courts' latitude when deciding whether to retain jurisdiction over children is not "a license for arbitrary procedure").

Due-process complaints in juvenile proceedings are subject to the general error preservation rules. *See In re A.M.*, No. 03-03-00703-CV, 2004 WL 2732142, at *1 (Tex. App.—Austin Dec. 2, 2004, no pet.) (mem. op.) (citing Tex. R. App. P. 33.1). Consequently, to preserve error, an appellant's due-process argument on appeal must comport with his complaint in the trial court. *J.I.G. v. State*, No. 14-20-00459-CV, 2021 Tex. App. LEXIS 414, at *3 (Tex. App.—Houston [14th Dist.] Jan. 21, 2021, no pet.) (mem. op.). Upon review of the record, we conclude that I.N.A.'s due-process argument in the trial court was limited to complaints (made in moving for directed verdict) (1) that the State failed to present "Dr. Frey and the expert analysis of his

---

[4] The call was not admitted into evidence.

9

report" to establish "why certification should occur" and (2) that, instead, the State "br[ough]t up Instagram account and anonymous callers."[5] We cannot conclude that either of these complaints require reversal under *Kent*.

First, the State's decision not to call Dr. Frey as a witness did not deprive I.N.A. of a hearing or of access to any records. Dr. Frey's report and notes were admitted into evidence as State's exhibit 5, and I.N.A. does not argue that his counsel lacked access to those records. His counsel did not object to their admission either, telling the court: "These were ordered by the court . . . . They're obviously favorable to our client so, that's fine." And later during the proceedings, after requesting that she be allowed to call Dr. Frey as a witness, I.N.A.'s counsel decided against it, making the strategic decision to proceed without his testimony.

As to I.N.A.'s due-process complaint about allegedly inadmissible social-media posts, we cannot conclude that the juvenile court's admission of this evidence, standing alone, constitutes a due-process violation. As I.N.A. himself acknowledges, the rules of evidence are relaxed in transfer hearings, so it is not irregular or unique treatment for the State to have offered and for the juvenile court to admit evidence that is otherwise inadmissible. *See, e.g.*, *In re T.L.C.*, 948 S.W.2d 41, 44 (Tex. App.—Houston [14th Dist.] 1997, no writ) (affirming certification order even when certain evidence might have been inadmissible); *In re J.S.C.*, 875 S.W.2d 325, 330 (Tex. App.—Corpus Christi–Edinburg 1994, writ dism'd by agr.) (same); *In re G.B.B.*, 638 S.W.2d 162, 164 (Tex. App.—Houston [1st Dist.] 1982, no writ) (same).

---

[5] Not only did I.N.A.'s counsel not raise his other due-process complaints in moving for directed verdict, counsel did not object (1) when the State made the complained-of statements during closing argument; (2) to the admission of Conboy's counseling notes when offered, as previously discussed; or (3) to the testimony concerning the complained-of phone call between the "officer and the first assistant felony chief" when it was presented by the officer. *See* Tex. R. App. P. 33.1 (preservation of error).

To the extent I.N.A.'s due-process complaint has been preserved, I.N.A. has failed to establish that his due-process rights were violated. We thus overrule his renumbered fourth issue.

## CONCLUSION

We affirm the juvenile court's order waiving jurisdiction and transferring I.N.A. to criminal district court.

_____

Chari L. Kelly, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed

Filed: October 4, 2022

11